# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ISAAC WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:06-cv-04760-JEO |
| | ) |
| PHILLIP GUTHERY, Individual Capacity; | ) |
| BRYAN CHAPMAN, Individual Capacity; | ) |
| DAVID ELLIS, Individual Capacity; | ) |
| ROBERT ZUBER and EMILE | ) |
| AMBROISE,[1] both in Individual Capacities; | ) |
| PRISON HEALTH SERVICES, INC. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This cause is before the court on the motions of the various defendants for summary judgment. (Doc. 88 & 100). The matters have been fully briefed and are now ready for disposition. Upon consideration, the court find that the motion of Prison Health Services, Inc. (doc. 88) is due to be granted and the motion as to the Alabama Department of Corrections Officers (doc. 100) is due to be granted in part and denied in part.

## I.    BACKGROUND

### A.    Procedural Background

The plaintiff initially filed a *pro se* complaint alleging that the defendants, including Phillip Guthery, Bryan Chapman, David Ellis, Emile Ambroise, Robert Zuber, unnamed correctional officers and the Alabama Department of Correction (ADOC), used excessive force

---

[1]The docket sheet lists this defendant as Ambrose, while the parties refer to him as Ambroise.

1

resulting in a broken rib. (Doc. 1). Following preliminary proceedings, the plaintiff was permitted to proceed on his claims against the individual defendants in their personal capacities. (Doc. 42). Thereafter, the plaintiff consented to the jurisdiction of the undersigned. (Doc. 44). He was appointed counsel. (Doc. 45).

Appointed counsel filed an amended complaint. (Doc. 56). Count I reiterated the initial claim of excessive force, pursuant to 42 U.S.C. § 1983; Count II alleged a claim of deliberate indifference to his medical needs, pursuant to § 1983; and Count III alleged a state law breach of contract claim against Correctional Medical Services ("CMS"). (*Id*.) The plaintiff later filed a third amended complaint substituting Prison Health Services, Inc. ("PHS"), for CMS.[2] (Doc. 65).

On June 29, 2010, PHS filed a motion for summary judgment on the third-party beneficiary claim for breach of contract (Count III). (Doc. 88). Included with the motion are a brief (doc. 89), an amendment thereto (doc. 90), various evidentiary submissions (doc. 88), and a supplemental evidentiary filing (doc. 102). The plaintiff has filed a response in opposition to PHS's motion, including evidentiary submissions. (Doc. 107-110). PHS filed a reply to the same. (Doc. 116).

The ADOC defendants also have filed a motion for summary judgment, including evidentiary attachments and a brief. (Doc. 100). The plaintiff has filed a response and an evidentiary submission in opposition to the motion. (Doc. 111-12, 115). The defendants have filed a reply to the same. (Doc. 114).

---

[2] PHS has also consented to the jurisdiction of the undersigned to dispose of this matter. (Doc. 92).

B.     Facts[3]

The plaintiff was returned to the St. Clair Correctional Facility after an outside medical appointment for an injured jaw. (Doc. 112 (Ex. 1) at 6 of 45). As he was being escorted to his cell, around 3:15 p.m., defendant Guthery told the plaintiff that he needed a haircut. The plaintiff, believing that his hair was within prison regulations, objected and continued walking to his cell. Guthery then grabbed the plaintiff by the handcuffs. Ultimately, according to the plaintiff, Guthery and Chapman forced him to the floor and began kicking and punching him while he was handcuffed on the floor. (*Id*. at 6-7 of 45).

The plaintiff ultimately was removed from the area and taken by Sergeant Graves to the infirmary for examination, a body chart and any necessary treatment. The plaintiff states that when he was in the infirmary, Guthery came towards him with his "fists balled up." (*Id*. at 9 of 45). The plaintiff rose to his feet and was grabbed by defendants Ambroise, Ellis and Zuber, who choked and punched him. (Doc. 1 at 5). He was taken to another room where Ellis began choking him to the point of unconsciousness. (*Id*.) When he regained consciousness, Zuber, Ambroise and Chapman were hitting, kicking and choking him. (*Id*. at 5-6).

The plaintiff was taken back to the infirmary for a second examination. Thereafter, he was transported by wheelchair to his cell in the segregation unit. (Doc. 100-1 at 5 of 7).

---

[3]The reader should keep in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

Later that evening, he submitted a sick call request to an unidentified officer.[4] (Doc. 112, Ex. 1 at 97; Ex. 3). In it, he stated that his ribs hurt when he took a breath and suspected that they were broken. Guthery and Chapman were the rovers in his unit at the time he made his sick call request. Additionally that same evening, the plaintiff complained to the pill call nurse, in Zuber's presence, that he was in pain and needed pain medication. (Doc. 100-1 at 5 of 7; Doc. 102-1 at 9 of 35). He made two additional requests for medical assistance that night to officers. (Doc. 102-1 at 14 of 35). The first was Officer Puckett who made a record of the same.[5] The second was made to an unidentified officer.[6] According to the logs, the infirmary was notified, but no action was taken.[7] (*Id*.) At some point during the night, the plaintiff believes he lapsed into unconsciousness in his cell. Other inmates observed the plaintiff in his cell and stated in their affidavits that unspecified corrections officers looked into the plaintiff's cell through the cell window, but took no action.[8] *See* Affidavit of Kendarrius Daniels (Ex. 5), Doc. 110 at 44 of 57. At least one person states that "correctional officers were also observed to have dissuaded nurses from assisting Mr. Williams."[9] (*Id*. at ¶ 7). Another inmate, Antonio Smith, states as

---

[4] The plaintiff was not able to recall the identity of the officer to whom he gave the form. (Doc. 110 at 32 of 57). However, the plaintiff, elsewhere in his deposition, states that he did not give it to any of the individually named defendants. (*Id*. at 33 of 57).

[5] Puckett is not a defendant in this action.

[6] The entry appears to have been made by an officer with the initials "DS."

[7] The record indicates, however, that his "Sick Call Request" was addressed on August 10, 2006, at 7:15 p.m. (Doc. 112 (Ex. 4) at 41 of 45). According to the medical records, he was referred to "MD/PA." (*Id*.)

[8] The court notes that counsel for the ADOC defendants suggests that this court "can take judicial knowledge that a segregation door is solid steel with a very small window in the upper portion of the door ... and you cannot see underneath the door." (Doc. 114 at 3). In view of the court's responsibility to examine the facts in a light most favorable to the plaintiff, the undersigned declines to take judicial notice as suggested.

[9] Once again, the officers are unidentified. Additionally, there is no reference to a specific time or descriptions of the individuals.

follows:

> Mr. Williams remained alone and locked in his cell for, I estimate, a day and a half until he was taken to a free world hospital. During the time he was in his cell, I did not see Mr. Williams moving around at all. (Usually, I could see his feet moving around through space between the door and floor.) The officers never entered Mr. Williams' cell to check on or to help him; the officers would only peek in Mr. Williams' cell window from time to time for inmate counts. At meal time, officers would also briefly open Mr. Williams' cell door to allow the inmate runners to slide Mr. Williams' tray of food into his cell on the floor. When they opened Mr. Williams' cell door, I could see Mr. Williams lying motionless on his bed. Otherwise, the officers told the runners to stay away from Mr. Williams' cell. During this time, no nurses or other medical personnel came to check on or to help Mr. Williams.

(Smith Affidavit (Doc. 112, p. 36 of 45, at ¶ 9)[10]).

The plaintiff was found unresponsive in his cell on August 11, 2006. (Ex. 4). He was removed from his cell by wheelchair, transported to the hospital, and diagnosed with a broken rib. He was treated for his injuries. (Ex. 5).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FEDERAL RULE OF CIVIL PROCEDURE 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however,

---

[10]This affidavit is also located at document 110 (Ex. 4) at 41 of 57.

the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp.*, 477 U.S. 317; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. 317; *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a *prima facie* case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

### III.   DISCUSSION

####    A.   PHS's Motion for Summary Judgment

As noted, the plaintiff asserts that PHS is liable for certain of his injuries because he was not provided medical care he was due under the Eighth Amendment. Specifically, he alleges a claim against PHS under a third-party beneficiary theory pursuant to the health care contract between PHS and the ADOC. PHS has moved for summary judgment, alleging five grounds: (1) the plaintiff failed to exhaust administrative remedies, (2) the court is without jurisdiction to hear his claims because he has failed to allege a federal violation, (3) his claim is barred by the two year statute of limitations, (4) the plaintiff lacks standing, and (5) he has failed to

demonstrate the requisite proximate cause for relief. (Doc. 89 at 2-3).

### 1. Failure to Exhaust Administrate Remedies

PHS initially asserts that the motion is due to be granted because the plaintiff failed to exhaust administrative remedies before filing his claim. *See* 42 U.S.C. § 1997e. (Doc. 89 at 5 of 18). The plaintiff responds that he is not required to exhaust his administrative remedies when bringing a state law claim against PHS. (Doc. 107 at 9). The court agrees.

Section 1997e does not require that the plaintiff exhaust his administrative remedies to advance a breach of contract claim. *See Torres v. Corrections Corp. of America*, 372 F. Supp. 2d 1258, 1263 (N.D. Okla. 2005) (stating, "Section 1997e(a), by its terms, applies only to claims filed by prisoners "with respect to prison conditions under section 1983 of this title, or any other Federal law."). Accordingly, the motion is due to be denied on this ground.

### 2. Lack of Jurisdiction

PHS next asserts that this court does not have jurisdiction over the plaintiff's contract claim. (Doc. 89 at 8 of 18). The plaintiff retorts that the court has supplemental jurisdiction over his breach of contract claim pursuant to 28 U.S.C. § 1367. (Doc. 107 at 10). The court once again agrees with the plaintiff.

As the court has original subject matter jurisdiction over the plaintiff's § 1983 claims, it has supplemental jurisdiction over the breach of contract claim. *See Parker v. Scrap Metal Processors*, *Inc.*, 468 F.3d 733, 742 (11th Cir. 2006) (holding, "The district court has original jurisdiction over plaintiff's claims under the RCRA and CWA pursuant to 28 U.S.C. § 1331.[ ] Jurisdiction over the remaining state law claims comes under the doctrine of supplemental or pendent jurisdiction outlined in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.

Ct. 1130, 16 L. Ed. 2d 218 (1966), and codified in 28 U.S.C. § 1367) (footnotes omitted)). Because the breach of contract claim "arise[s] out of a common nucleus of operative fact with a substantial federal claim," this court has the requisite supplemental jurisdiction. *Id*. at 742-43.

### 3.     Statute of Limitations

The defendant next asserts that the plaintiff's § 1983 claim is barred by the applicable two year statute of limitations. (Doc. 89 at 9 of 18). The plaintiff responds that he is not asserting a claim against PHS under § 1983. (Doc. 107 at 20 of 25). Accordingly, the defendant's assertion is without merit.

### 4.     The Plaintiff is not an Intended Third-party Beneficiary

PHS next asserts that the plaintiff's claim is due to be dismissed on summary judgment because he lacks standing to assert such a claim because he is not an intended third-party beneficiary to the ADOC/PHS contract. (Doc. 89 at 10 of 18). The plaintiff retorts that he was an intended third-party beneficiary. (Doc. 107 at 12 of 25). The defendant replies that the plaintiff's claim is improperly advanced, contrary to ALABAMA CODE § 6-5-548, and due to be dismissed because the plaintiff cannot meet the requisite standard for relief via expert testimony. (Doc. 116 at 3-6).

In *Beverly v. Macy*, 702 F.2d 931 (11th Cir. 1983), the Eleventh Circuit Court of Appeals reviewed the applicable considerations. It stated:

> It is well-established that the parties to a contract may create rights in a third-party beneficiary by manifesting an intention to do so. "The crucial inquiry involves a determination of intent, and third parties may sue on the contract only if it may be said to have been intended for their direct, as opposed to incidental, benefit." *Ross v. Imperial Constr. Co*., 572 F.2d 518, 520 (5th Cir. 1978) (applying Alabama law); *see Riegal Fiber Corp. v. Anderson Gin Co*., 512 F.2d 784, 787-88 (5th Cir. 1975) (applying Alabama law); *United States Pipe & Foundry Co. v. United States Fidelity & Guaranty Co*., 505 F.2d 88, 90 (5th Cir.

1974) (applying Alabama law). According to the Restatement (Second) of Contracts:

> A beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of a promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302. Thus, the key inquiry is whether the claimant was intended to be benefited by the contract provision in question. *See id.; Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 307, 48 S. Ct. 134, 135, 72 L. Ed. 290 (1927); *Avco Delta Corp. Canada Ltd. v. United States*, 484 F.2d 692, 702 (7th Cir. 1973), *cert. denied sub nom. Canadian Parkhill Pipe Stringing, Ltd. v. United States*, 415 U.S. 931, 94 S. Ct. 1444, 39 L. Ed. 2d 490 (1974); *Mutual Benefit Health & Accident Ass'n of Omaha v. Bullard*, 270 Ala. 558, 120 So. 2d 714, 723 (Ala. 1960). Further, "[i]t is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made." Restatement (Second) of Contracts § 308; *see Owens v. Haas*, 601 F.2d at 1250; *Avco Delta Corp. Canada Ltd. v. United States*, 484 F.2d at 702; *Willamette-Western Corp. v. Columbia Pacific Towing Corp.*, 466 F.2d 1390, 1392-93 (9th Cir. 1972); *Harris v. Board of Water & Sewer Comm'rs of Mobile*, 294 Ala. 606, 320 So. 2d 624, 628 (Ala. 1975); 4 Corbin, Contracts § 781.[ ] Finally, when determining whether the parties to the contract intended to bestow a benefit on a third party, a court may look beyond the contract to the circumstances surrounding its formation. *See Ross v. Imperial Constr. Co.*, 572 F.2d at 520-21; Restatement (Second) of Contracts § 302, Reporter's Note....

*Beverly*, 702 F.2d at 940 (footnote omitted).

Section 11.8 of the applicable PHS/ADOC contract provides, in pertinent part in the section captioned "Other Contracts and Third-Part beneficiaries," as follows:

> The parties agree that they have not entered into this Agreement for the benefit of any third person or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof.

(Doc. 88-2 (Ex. B) at ¶ 11.8; Doc. 108 at 20 of 57). Other provisions in the contract note that

9

ADOC is responsible for providing reasonably necessary health care for the inmates, it desires to provide health care for the inmates in accord with applicable law, and the ADOC enters into the contract intending to provide the requisite services. (*Id*. at 1 and Doc. 108 at 1 of 57). Additionally, the "Request for Proposal," which led to the execution of the relevant contract, provides that the ADOC "is responsible through [PHS] for the provision of inmate health services .... and [i]t is the intent and purpose of the ADOC that all assigned inmates receive adequate health care...." (Doc. 109 at 52 of 57 (ADOC 000122)).[11]

The plaintiff argues that the above sections, save § 11.8, "are susceptible to no other interpretation than that the parties well-intended that the inmates in the Department's custody would receive appropriate health care services and that such health care services were to be provided by PHS." (Doc. 107 at 14 of 25). While the court agrees with that statement, it does not find that it confers a legal right upon the plaintiff to bring a third-party beneficiary claim against PHS.

In *Swann v. Regions Bank*, 17 So. 3d 1180 (Ala. Civ. App. 2008), the court stated:

> "'[I]t has long been the rule in Alabama that one who seeks recovery as a third-party beneficiary of a contract must establish that the contract was intended for his direct, as opposed to his incidental, benefit.' *Mills v. Welk*, 470 So. 2d 1226, 1228 (Ala. 1985). 'To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached.' *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So. 2d 99, 101-02 (Ala. 1987)."

*Swann*, 17 So. 3d at 1191 (citing *McGowan v. Chrysler Corp.*, 631 So. 2d 842, 848 (Ala. 1993)). In *Mills v. Welk*, 470 So. 2d 1226 (Ala. 1985), the Court, quoting *Federal Mogul Corporation v.*

---

[11]The ADOC Bates number is located at the lower right-hand portion of each page.

*Universal Construction Co.*, 376 So. 2d 716 (Ala. Civl. App. 1979), stated:

> Where, however, two contracting parties expressly provide that a third party shall have no legally enforceable rights in their agreement, a court must effectuate the expressed intent by denying the third party any direct remedy. *E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas*, 551 F.2d 1026 (5th Cir. 1977), *cert. denied*, *Providence Hospital v. Manhattan Construction Co. of Texas*, 434 U.S. 1067, 98 S. Ct. 1246, 55 L. Ed. 2d 769 (1978).

*Mills*, 470 So. 2d at 1229 (quoting *Federal Mogul*, 376 So. 2d at 724); *see also Luckern v. Suffolk County Sheriff's Dept.*, No. 07-12158-JLT, 2010 WL 1172648, *6 (D. Mass. March 22, 2010) (stating that "[t]o properly claim status as a third party beneficiary the plaintiff must demonstrate that 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties....'") (citation omitted).[12]

In the present case, the court finds that the clear and expressed intent of the parties to the health care contract, PHS and ADOC, was not to create any third party rights as a consequence of the agreement. The court further finds that it must honor that specific, expressed intent. *See Flournoy v Ghosh*, No. 07 C 5297, 2010 WL 1710807 (N.D. Ill. April 27, 2010) (holding that a motion to dismiss was due to be granted because the plaintiff inmate was not a third party beneficiary where the agreement between the contracting parties contained an express provision disclaiming the existence of third party beneficiaries); *But cf. Cherry v. Crow*, 845 F. Supp. 1520, 1523 (M.D. Fla. 1994) (finding that the Polk County Sheriff and PHS "intended, as a result of their agreement, to benefit persons situated such as Plaintiff's decedent").[13] Accordingly, the

---

[12]The court in *Luckern* noted that "rarely has a court ruled a prisoner to be a party to a medical services contract in a correctional institution.[ ]" *Id*. at *7 (footnote and citation omitted). *But see Ogujnde v. Prison Health Services, Inc*., 645 S.E. 2d 520, 525 (Va. 2007) (holding that inmates were third party beneficiaries under the contract); *Rathke v. Corrections Corp of America*, 153 P.3d 303, 310-11 (Alaska 2007) (holding that prisoners are intended third-party beneficiaries of contract between Alaska corrections department and private company housing inmates).

[13]There is no indication in the *Cherry* case that the contract contained the express language in the matter before this court.

court finds that PHS's motion for summary judgment is due to be granted.[14]

### 5. Proximate Cause

Lastly, PHS asserts that the plaintiff has failed to allege or establish any facts proving any act or omission by PHS proximately caused his alleged injuries. (Doc. 89 at 16-17 of 18). The plaintiff responds that the issue of proximate cause is, in this case, a disputed issue of material fact. (Doc. 107 at 23 of 25). The court pretermits any discussion of this aspect of the motion premised on the previous determination herein.

### B. The ADOC Defendants' Motion

The ADOC defendants, Phillip Guthery, Bryan Chapman, David Ellis, Robert Zuber, and Emile Ambroise, assert that they are entitled to summary judgment premised on the failure of the plaintiff to allege and demonstrate who acted with deliberate indifference to his medical care after the incidents of excessive force. (Doc. 100 at 6-8 of 10). The plaintiff retorts that the factual disputes between the parties precludes summary judgment at this juncture. (Doc. 111 at 1 of 22).

In *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), "the Supreme Court held that deliberate indifference to serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment." *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). To state a claim of inadequate medical treatment, the plaintiff's proof involves an objective and a subjective requirement. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *see also Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989).. First,

---

[14] The court finds the *Harris v. Board of Water & Sewer Comm'rs. of Mobile* case cited by the plaintiff to be factually and legally distinguishable. 320 So. 2d 624 (Ala. 1975).

the plaintiff must allege an "objectively serious deprivation" of medical care, which requires (1) "an objectively serious medical need ... that, if left unattended, pos[es] a substantial risk of serious harm," and (2) that the defendant's response "was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice actionable under state law." *Id*. (alterations in original) (internal quotations and citations omitted). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation and quotations omitted).

Second, the plaintiff must show that the defendant's subjective intent to punish by pleading facts that would show that he acted with deliberate indifference. *Taylor*, 221 F.3d at 1258. Thus, the plaintiff must demonstrate (1) the actor's "subjective knowledge of a risk of serious harm;" (2) the actor's "disregard of that risk;" and (3) "conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir.2004) (citation omitted). As noted in *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990), to avoid summary judgment, the plaintiff

> ... must offer some evidence that prison officials were deliberately indifferent to his injuries. A prison guard's intentional denial or delay of medical care is evidence of deliberate indifference. *Estelle v. Gamble*, 429 U.S. at 104, 97 S. Ct. at 291. When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference. *Thomas v. Town of Davie*, 847 F.2d 771, 772-73 (11th Cir. 1988); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985); *see H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1087 (11th Cir. 1986).

*Brown*, 894 F.2d at 1538. *See also Granda v. Schulman*, 372 Fed. Appx. 79, **4 (11th Cir. 2010) (noting allegations sufficient to state a claim where the defendant's delay "in treating a

'known or obvious' serious medical condition is unexplained").

There is no dispute that the plaintiff's injuries were objectively serious. A broken rib, following an altercation, is sufficient to satisfy the first prong for purposes of the present motion. The next question is whether the evidence adduced thus far is sufficient to satisfy the second component, subjective intent, as to each defendant.

The court will begin its analysis with the medical claim against Ambroise and Ellis. There is no evidence in the record that these two defendants were "deliberately indifferent" to any medical need of the plaintiff. The motion is due to be granted as to them on this claim.

Next is defendant Zuber. The evidence, which the court must accept at this juncture, shows that he was involved in the second altercation with the plaintiff. It also shows that he was present with Nurse Lowe during the evening pill call.[15] (Doc. 100-1 at 6 of 7 (8:41 p.m. Entry); Doc. 100-7 at 56 of 57 (8-9-06 Sick Call Request); Doc. 110 at 25-26 of 57). It was during this time that the plaintiff asserts that he complained aloud of pain and requested medication. (Doc. 110 at 26 of 57). The plaintiff argues that these facts serve as "circumstantial evidence supporting the fact finders reasonable inference that, by escorting Nurse Lowe, Officer Zuber would have also heard Mr. Williams' urgent complaint of rib pain and request for medication, thus making him aware of Mr. Williams' serious medical need. [And] Officer Zuber's subjective knowledge in this regard is a fact issue preventing summary judgment." (Doc. 111 at 15 of 22).

In support of his claim, the plaintiff cites *Brown*. In that case, the plaintiff approached an officer and told him of a "racial problem" in his cell. The plaintiff's situation was not resolved

---

[15] The nurse's progress notes also state: "Inmate cursing & threatening nurse to throw 'shit' in front of cell during pill call. Inmate also cursing at officer and making threats. Pills not given." (Doc. 100-7 at 57 of 57).

or even addressed by the officer, and a fight ensued. The plaintiff suffered two broken bones in his foot and a cut under his eye. As he was removed from the cell, the plaintiff told the defendant that his foot hurt as if he had broken something, and swelling had become evident. The defendant promised to send someone to look at the plaintiff's foot, but no one came. After about four hours, the plaintiff asked a trustee to find the defendant for him. The defendant had left for the day. The plaintiff received attention sometime later after the defendant's shift ended. The trial court found the plaintiff's deliberate indifference claim deficient, granting summary judgment. Reversing, the Eleventh Circuit Court of Appeals held there was a dispute of material fact and that "an unexplained delay of hours in treating a serious injury states a *prima facie* case of deliberate indifference." *Brown*, 894 F.2d at 1538-39.

The facts in this case distinguish it from *Brown*. The plaintiff did not have any visible injuries; Zuber did not promise to provide assistance and then do nothing; a nurse was present to hear the complaint during the pill call; and there was no further communication between the plaintiff and Zuber. However, Zuber's presence at the time of the request distinguishes him from the other defendants. He also participated in the earlier altercation. Thus, these facts are legally sufficient to support the plaintiff's claim that Zuber was deliberately indifferent to his medical need.[16] Summary judgment is due to be denied on this basis as to Zuber only.[17]

---

[16] The court notes that the plaintiff stated during his deposition that he was not accusing Ellis, Zuber or Ambroise of being "deliberately indifferent" to his medical needs. (Doc. 110 at 18 of 57). However, that question was objected to and was a compound question that asked for a legal conclusion.

[17] The court notes that inmate Daniels states in his affidavit that during the pill call after the plaintiff's return, he heard the plaintiff "groaning in pain" and complaining to the nurse about his rib pain, "throwing up blood" and needing to go to the infirmary. (Doc. 110 at 45 of 57). However, he states that no one helped him. "Instead they left him in his cell." (*Id*.) The difficulty with this evidence is that it cannot, under the circumstances, be attributed to any named defendant, including Zuber. It does, however, support the plaintiff's assertion that he did complain to the nurse.

Daniels further states:

Lastly, is the claim against Chapman and Guthrey. First, as to Chapman, the evidence shows that at 9:15 p.m on August 9, 2010, the plaintiff complained to Officer Puckett, during a security check, that his ribs were bothering him. (Doc. 102-1 at 14 of 35). The evidence further shows that Chapman was a "rover" during this shift. (Doc. 100-3). Accordingly, the plaintiff concludes, "Because Officer Chapman was assigned to the 'rover' duty post on Mr. Williams' cell block, it is reasonable for the fact finder to draw the inference that Officer Chapman would have also been aware of Mr. Williams' complaint and thus possess subjective knowledge of Mr. Williams' serious medical needs." (Doc. 111 at 16 of 22). The court disagrees, the fact that Chapman was a "rover" is insufficient as a matter of law to overcome the motion for summary judgment. Additionally, the "eyewitness" testimony that "on multiple occasions, correctional officers would pass by Mr. Williams' segregated cell, peek in his window and then keep going," is insufficient. (*Id*.) The inmate affidavits do not identify Chapman by name, location, time or description so as to overcome the motion. Similarly, the conclusory statement that correctional officers "would prevent nurses and inmate runners form approaching or entering Mr. Williams' cell to help him," is insufficient. (*Id*.) This conduct is not attributed to any specific time or specific person. The motion is due to be granted as to Chapman on this claim.

Second, as to Guthery, the evidence for the plaintiff is less compelling. Although Guthery was also a rover during the evening shift, the court does not find that sufficient to

---

> From that point on, I could see Mr. Williams laid out on the floor of his cell. From time to time, when officers would pass by Mr. Williams' cell, they would peek in the window and then keep going. Each time that nurses would come onto the block and ask if Mr. Williams needed help, the officers would tell the nurses, "Nah, he's alright. Let's go." The nurses would then walk past Mr. Williams' cell. No one stopped to help Mr. Williams or take him out of his cell. All of us inmates told the officers that Mr. Williams was unconscious. The officers would only reply, "He's alright," and then do nothing to help him. After this went on for a long time, I thought Mr. Williams was dead.

(*Id*. at ¶ 7). The problem, again, with this evidence is that it is not attributed to any named defendant.

16

overcome the motion as to him. There is no evidence he was aware of the request or requests by the plaintiff or that he did anything to interfere with the same.[18]

## IV.  CONCLUSION

Premised on the foregoing, the court find that the motions for summary judgment of PHS on the contract claim and the ADOC defendants on the denial of medical care claim (doc. 88 & 100) are due to be granted except as to the medical claim advanced against Zuber. The excessive force allegations contained in Count I against all the ADOC defendants in their individual capacities and the medical claim in Count II against Zuber in his individual capacity remain for trial. An appropriate order will be entered in accordance herewith.

**DONE**, this the 5th day of November, 2010.

*John E. Ott*

**JOHN E. OTT**
United States Magistrate Judge

---

[18]Finally, the court notes that nothing in the record demonstrates what roles the named defendants were serving in the segregation or infirmary units on August 10 or 11, 2006, much less whether they were in a position to hear or see the plaintiff. The only evidence the court found was the statement by the plaintiff that Guthery and Chapman were on duty on August 11, 2006. (Doc. 110 at 18 of 57). This is not sufficient to overcome the motion for summary judgment. (The court further notes that later in his deposition (*id*. at 36 of 57), the plaintiff states that he did not know if any of the named defendants were at work on August 10 or 11, 2006).